**Opinion filed October 4, 2012**



In The

# Eleventh Court of Appeals

_____

## No. 11-10-00315-CR
_____

## LEON WILLIS WILKERSON, Appellant

## V.

## STATE OF TEXAS, Appellee

On Appeal from the 19th District Court

McLennan County, Texas

Trial Court Cause No. 2009-66-C1

### O P I N I O N

The jury convicted Leon Willis Wilkerson, appellant, of the offense of robbery and, upon appellant's pleas of true to the enhancement allegations, assessed his punishment at confinement for ninety-nine years. We modify and affirm in part, and we reverse and remand in part.

Appellant presents five issues for review. In the first issue, he contends that the trial court abused its discretion by prohibiting his trial counsel from asking questions at voir dire regarding comparative standards of proof. In the second issue, he asserts that, alternatively, his trial counsel was prevented from rendering effective assistance of counsel based upon the voir

dire restriction addressed in appellant's first issue.  In his third issue, appellant contends that the trial court erred in refusing to charge the jury on the lesser included offense of theft.  In the fourth issue, appellant complains of the assessment of court-appointed attorney's fees and court-appointed investigator's fees as court costs in the judgment.  In his final issue, appellant contends that the trial court improperly instructed the jury on the range of punishment.

Initially, we note that the State has asserted in its brief that appellant has waived "all error in the guilt/innocence phase of the trial" under the *DeGarmo* doctrine.  *See DeGarmo v. State*, 691 S.W.2d 657 (Tex. Crim. App. 1985).  We disagree.  In *DeGarmo*, the court stated that, when a defendant testifies at the punishment stage of trial and admits his guilt, he "not only waives a challenge to the sufficiency of the evidence, but he also waives any error that might have occurred during the guilt stage of the trial."  *Id.* at 661.  The *DeGarmo* doctrine was reconsidered and largely disavowed by the Court of Criminal Appeals in *Leday v. State*, 983 S.W.2d 713 (Tex. Crim. App. 1998).  *See Reyes v. State*, 30 S.W.3d 409, 410–11 (Tex. Crim. App. 2000); *Peña-Mota v. State*, 986 S.W.2d 341, 345 (Tex. App.—Waco 1999, no pet.).  We decline to hold that appellant has waived his issues on appeal.  *See Leday*, 983 S.W.2d at 725; *Reyes v. State*, 994 S.W.2d 151, 152–53 (Tex. Crim. App. 1999).

### *Voir Dire as to Burdens of Proof*

In his first two issues, appellant complains that his rights to an impartial jury, to effective assistance of counsel, and to due process were violated when the trial court prohibited him from asking questions relating to a comparison of various burdens of proof, including preponderance of the evidence, clear and convincing evidence, beyond a reasonable doubt, reasonable suspicion, and probable cause.  Appellant asserts that, because of the limitation placed on his voir dire, he was prohibited from educating the prospective jurors on the burden of proof and from intelligently exercising his peremptory challenges.  The record shows that appellant had filed a motion specifically requesting that he be allowed to ask questions relating to the prospective jurors' understanding of these types of proof.  Among the questions proposed by appellant was the following: "Do you understand that there is a difference in the amount of proof necessary to reach a verdict and have a decision made in a civil case (preponderance of the evidence) and in a criminal case (beyond a reasonable doubt)?"  He also proposed a similar question but substituted termination of parental rights and clear and convincing evidence.  Additionally, appellant sought to ask: "Do you understand that proof beyond a reasonable doubt is a higher standard of proof

2

than proof beyond clear and convincing proof?" The trial court denied appellant's motion, ruled that appellant could not "go into comparisons of the standards of proof," but permitted appellant to ask the voir dire panel about the "beyond a reasonable doubt" standard and what that standard means.

The Texas Court of Criminal Appeals has recently addressed this issue. It determined that voir dire questions regarding the differences between the criminal and civil burdens of proof are relevant to a legitimate defensive challenge for cause, and it held that the trial court abused its discretion by restricting voir dire. *Fuller v. State*, 363 S.W.3d 583 (Tex. Crim. App. 2012). In *Fuller*, the court set out the general law regarding the trial court's discretion to manage voir dire and the right of an accused to ask prospective jurors about what they think reasonable doubt means. *Id.* at 585–86. A defendant is entitled to question prospective jurors on any matter that will be an issue at trial, including their understanding of "reasonable doubt." *Dinkins v. State*, 894 S.W.2d 330, 344–45 (Tex. Crim. App. 1995). The court in *Fuller* stated:

> On the strength of our holding in *Paulson* [*v. State*, 28 S.W.3d 570 (Tex. Crim. App. 2000)], believing that the appellant's proposal to contrast reasonable doubt with preponderance of the evidence and clear and convincing evidence would be tantamount to defining it for the jury panel, the trial court in this case disallowed it.
>
> We think this was a mistake. As should be evident from the passage from *Woolridge* [*v. State*, 827 S.W.2d 900 (Tex. Crim. App. 1992),] that we have quoted above, inquiry into a prospective juror's understanding of what proof beyond a reasonable doubt means constitutes a proper question *regardless* of whether the law specifically defines that term. The jury's ability to apply the correct standard of proof remains an issue in every criminal case. If anything, the fact that current case law has come full circle and once again provides jurors with no definition of reasonable doubt only heightens the incentive for the parties to test the understanding of the veniremembers. And it strikes us as particularly apt to inquire whether a prospective juror understands that proof beyond a reasonable doubt must *at least* constitute a more onerous standard of proof than preponderance of the evidence and clear and convincing evidence. It is but the flip side of the inquiry that prosecutors engage in routinely during voir dire, designed to test whether prospective jurors will hold the State to the inappropriately onerous standard of proof beyond *all* doubt. While neither area of inquiry purports to assign a precise meaning to the term "reasonable doubt"— leaving that for the jurors themselves to supply, according to their own common-sense understanding of the words—they do serve to set the lawful parameters of reasonable doubt and thereby foster the selection of jurors who will not impose a standard of proof upon the State that they know for sure to be either too lenient (preponderance or even clear and convincing) or too burdensome (*all* doubt). The

trial court erred to conclude that our opinion in *Paulson* inferentially invalidated these proper areas of inquiry.

. . . .

. . . It was appropriate for the appellant to explain the contrast among the various standards of proof in this case. That explanation was a necessary lead-in to the question that the appellant *twice* mentioned to the trial court that he would like to ask the prospective jurors: "I would like to ask them if they understand that proof beyond a reasonable doubt is the highest burden that we have anywhere in our legal system." A juror who does not understand this concept may prove unable to abide by it, and a juror who cannot abide by it cannot follow the law and would thus be challengeable for cause under Article 35.16(c)2. [TEX. CODE CRIM. PROC. ANN. art. 35.16(c)2 (West 2006).]

363 S.W.3d at 586–89 (footnotes omitted).

Following *Fuller*, we hold that the trial court abused its discretion by restricting appellant's voir dire in this case. Because we have found error, we must conduct a harm analysis. *Id.* at 589. The trial court's refusal to allow appellant to ask questions regarding the burden of proof by way of comparison to other burdens of proof constitutes nonconstitutional error that is subject to a harm analysis under TEX. R. APP. P. 44.2(b). *Jones v. State*, 982 S.W.2d 386, 391–92 (Tex. Crim. App. 1998); *Easley v. State*, No. 10-12-00018-CR, 2012 WL 4040798 (Tex. App.—Waco Sept. 13, 2012, no pet. h.) (mem. op., not designated for publication); *see Rich v. State*, 160 S.W.3d 575, 577 (Tex. Crim. App. 2005). Rule 44.2(b) provides that any "error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." A substantial right is affected when the error has a substantial and injurious effect or influence in determining the jury's verdict. *Rich*, 160 S.W.3d at 577. In conducting the required harm analysis, we consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case, the jury instructions, the State's theory and any defensive theories, closing arguments, voir dire, and whether the State emphasized the error. *Id.*

During voir dire, the trial court informed the panel that appellant was presumed innocent, that the burden to present evidence rested solely on the State, that the State had the burden to prove guilt beyond a reasonable doubt, and that there is no legal definition of "beyond a reasonable doubt." The court explained that "proof beyond a reasonable doubt is not determined by the number of witnesses called or the amount of exhibits that are introduced." The court continued, "You simply determine in your own mind where you draw that line of when that

4

standard has been met or if it has not been met. Unless it is met, the State is not entitled to a conviction and the defendant is entitled to be found not guilty." The record shows that both the State and appellant questioned the veniremembers about their understanding of "beyond a reasonable doubt." The prosecutor explained that the standard "in criminal cases is proof beyond a reasonable doubt" and asked, "What does that mean to you, beyond a reasonable doubt?" The prosecutor informed the panel that there is no definition for "beyond a reasonable doubt," that the legislature has not provided a definition, that the court will not give a definition, and that each juror is free to decide what proof beyond a reasonable doubt means. Appellant asked follow-up questions to some of the veniremembers.

Nothing in the record indicates that the jurors were unable to comprehend what is meant by "beyond a reasonable doubt." In the charge of the court, the trial court instructed the jury that "no person may be convicted of an offense unless each element of the offense is proven beyond a reasonable doubt." In his closing argument, the prosecutor addressed the issue of "beyond a reasonable doubt" by again stating that the term has not been defined and that, as discussed in voir dire, "it does not mean . . . proof beyond all doubt or 100 percent certainty of anything." Appellant's counsel did not address the meaning of "beyond a reasonable doubt" in his closing argument. Appellant's defensive theory at trial was that this was a theft, not a robbery, because appellant did not intentionally, knowingly, or recklessly cause bodily injury; he "push[ed] that man down" "to get the guy off of him." However, the evidence presented at trial in this case was overwhelming. Not only did eyewitnesses testify regarding the offense, but the store's surveillance video showing the offense was also admitted into evidence.

After considering everything in the record, including the evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the error, the jury instructions, the State's theory, appellant's defensive theory, closing arguments, voir dire, and whether the State emphasized the error, we hold that the error in prohibiting appellant to compare the various burdens of proof did not have a substantial and injurious effect or influence on the jury's verdict in this case. Thus, the error must be disregarded pursuant to Rule 44.2(b). Appellant's first issue is overruled.

Furthermore, although the trial court erred in restricting voir dire, that error did not prevent appellant's trial counsel from rendering effective assistance. The record shows that trial counsel conducted voir dire and preserved the error in the trial court's restriction of his voir dire

for appellate review. Contrary to appellant's assertion, his trial counsel was not prevented from assisting him during a critical stage of trial or from determining whether prospective jurors could understand the applicable burden of proof. Appellant has not shown that trial counsel rendered ineffective assistance. The second issue is overruled.

*Jury Charge on Lesser Included Offense*

In his third issue, appellant contends that the trial court erred in refusing to charge the jury on the lesser included offense of theft. Appellant does not dispute that he committed the offense of theft, but he does dispute that he committed the offense of robbery. The evidence presented in this case shows that appellant went into a store, secreted a carton of cigarettes, and left the store with the cigarettes but without paying for them. Before leaving the store, appellant was confronted by a cashier and a physically handicapped customer. The cashier asked appellant if he was "going to pay for what he put in his pants." An altercation ensued between appellant and the customer, Kevin Ussery, who was standing in front of the door. Appellant reached out and pushed Ussery. Appellant knocked Ussery into some shelves. Ussery then fell to the floor, hitting the cashier counter on the way down. In support of his request to the trial court for a jury charge on the lesser included offense of theft, appellant stated there was a question as to whether Ussery sustained a bodily injury, an element of robbery.

A two-pronged test is used to determine whether a lesser included offense must be included in the jury charge when requested. A charge on a lesser included offense is required if (1) the elements of the lesser offense are established by proof of the same or less than all the facts required to establish the offense charged and (2) there is some evidence that would permit a rational jury to find that, if the accused is guilty, he is guilty of only the lesser offense. *Hall v. State*, 225 S.W.3d 524, 526, 535 (Tex. Crim. App. 2007) (adopting "cognate-pleadings" approach); *Rousseau v. State*, 855 S.W.2d 666, 672–73 (Tex. Crim. App. 1993); *Royster v. State*, 622 S.W.2d 442, 446 (Tex. Crim. App. 1981); *see* TEX. CODE CRIM. PROC. ANN. art. 37.09 (West 2006). With respect to the first prong, an offense is a lesser included offense of another offense under Article 37.09(1) if the indictment for the greater-inclusive offense either (1) alleges all of the elements of the lesser included offense or (2) alleges elements plus facts from which all of the elements of the lesser included offense may be deduced. *Ex parte Watson*, 306 S.W.3d 259, 273 (Tex. Crim. App. 2009); *Hall*, 225 S.W.3d 524. The resolution of the first prong is a question of law to be determined by looking at the elements and facts alleged in the charging

instrument, not the evidence presented at trial. *Hall*, 225 S.W.3d at 535. With respect to the second prong, if evidence from any source raises the issue that a lesser included offense may have been committed and the issue is properly requested, the charge must be given. *Moore v. State*, 574 S.W.2d 122, 124 (Tex. Crim. App. 1978). A defendant is entitled to an instruction on every issue raised by the evidence, whether produced by the State or the defendant, regardless of whether it is strong, weak, unimpeached, or contradicted. *Thompson v. State*, 521 S.W.2d 621, 624 (Tex. Crim. App. 1974).

Appellant was charged by indictment with the offense of robbery as follows: appellant "did then and there, while in the course of committing theft of property, and with intent to obtain and maintain control of said property, intentionally, knowingly, or recklessly cause bodily injury to **KEVIN USSERY** by pushing him to the floor." Theft is defined as the unlawful appropriation of property with intent to deprive the owner. TEX. PENAL CODE ANN. § 31.03(a) (West Supp. 2012).[1] The offense of "theft" was specifically referenced in the indictment as an element of the offense of robbery as charged in this case. Thus, we hold that the first prong of the test was met. *See Bignall v. State*, 887 S.W.2d 21, 23 (Tex. Crim. App. 1994); *Earls v. State*, 707 S.W.2d 82, 83–85 (Tex. Crim. App. 1986); *Royster*, 622 S.W.2d at 447.

For the second prong, we must determine whether there was some evidence from which the jury could have determined that, if appellant was guilty, he was guilty only of the lesser offense of theft. Appellant asserts that there was conflicting evidence as to whether Ussery suffered bodily injury when appellant pushed him. "Bodily injury" is defined as "physical pain, illness, or any impairment of physical condition." TEX. PENAL CODE ANN. § 1.07(a)(8) (West Supp. 2012).

The evidence at trial included testimony from the cashier and Ussery and surveillance video from the store. The cashier testified at trial that appellant pushed Ussery "very hard," that the cashier counter "actually moved" when Ussery hit it, and that "it takes a bit of force to move that counter." Ussery got up and ran outside to get the license plate number from the vehicle in which appellant left. Ussery said he was okay, and no ambulance was summoned.

Ussery testified at trial regarding the events that occurred at the store. He saw appellant put "something that looked like cigarettes" under his shirt, and he heard one of the cashiers ask

---

[1]Section 29.02 of the Penal Code sets out the elements of the offense of robbery and specifically provides that a robbery occurs "in the course of committing theft as defined in Chapter 31." TEX. PENAL CODE ANN. § 29.02 (West 2011).

appellant if he was going to pay for them. Ussery told the other cashier to call the police. Ussery stepped in front of the door in an attempt to block the doorway and keep appellant in the store until police arrived. Ussery was standing in front of the door with his arms crossed in front of him when appellant walked up to him and said, "Are you going to stop me?" A physical altercation ensued, with appellant being the aggressor. Appellant pulled Ussery forward and then swung him over to his "bad side," and Ussery went crashing down. Ussery stated that "[i]t hurt a little bit" when he was pushed into the display and the counter and that "it did" cause him pain. Ussery testified that, the next day, his arm and knee were sore and his ribs were also bothering him as a result of the altercation with appellant. Ussery agreed that, at the store, when asked if he was okay, he said he was "fine." Ussery explained, "I mean, I was a little bruised and stuff, but I didn't -- there wasn't, I mean, permanent damage."

There is no evidence that would permit a rational jury to find that, if appellant was guilty, he was guilty of only the lesser offense of theft. Nothing in the record indicates that no physical altercation occurred between appellant and Ussery; the surveillance video depicts the event. Furthermore, the only evidence regarding Ussery's resulting bodily injury or lack thereof was that Ussery experienced pain even though he said he was fine. The trial court did not err in failing to instruct the jury on the lesser included offense of theft. *See Arzaga v. State*, 86 S.W.3d 767, 779–80 (Tex. App.—El Paso 2002, no pet.). Appellant's third issue is overruled.

*Assessment of Fees*

In his fourth issue, appellant argues that the trial court erred in assessing court-appointed attorney's fees and court-appointed investigator's fees as court costs because appellant was indigent and because the evidence was insufficient to show that appellant had the financial resources to reimburse the county. Appellant cites *Mayer v. State*, 309 S.W.3d 552 (Tex. Crim. App. 2010), and Articles 26.04 and 26.05 of the Code of Criminal Procedure. TEX. CODE CRIM. PROC. ANN. arts. 26.04, 26.05 (West Supp. 2012). The State concedes that the evidence is insufficient to support the assessment of attorney's fees and investigator's fees as court costs against appellant. Both appellant and the State assert that the proper remedy is to reform the judgment to delete these costs; we agree. *See Mayer*, 309 S.W.3d at 555. Accordingly, we sustain appellant's fourth issue and modify the judgment of the trial court to delete these fees.

*Improper Range of Punishment*

In his fifth issue, appellant contends that the trial court improperly instructed the jury that the range of punishment was confinement for twenty-five to ninety-nine years instead of five to ninety-nine years.[2] One of the two convictions used in this case to enhance appellant's punishment to that of a habitual offender was a 2006 conviction for possession of a controlled substance, which was a state jail felony. The State concedes that this state jail felony should not have been used to enhance appellant's punishment. TEX. PENAL CODE ANN. § 12.42 (West Supp. 2012). The State argues that appellant waived the error in this case because he did not object to the indictment. However, it is not the indictment that is problematic in this case. Appellant was charged by indictment as a habitual offender, with the indictment alleging two prior "felony" convictions. The State also asserts that the error is harmless because the punishment assessed was within the proper range of punishment and because appellant had other felony convictions that could have been used to enhance his punishment to that of a habitual offender under Section 12.42(d).

Appellant pleaded true to both enhancement allegations. The trial court instructed the jury accordingly and authorized the jury to assess punishment at confinement for life or for a term of not less than twenty-five years or more than ninety-nine years. Appellant did not object to the jury charge or otherwise inform the court that one of the convictions alleged for enhancement purposes could not be used for that purpose. On appeal, however, the record affirmatively reflects that one of the convictions alleged for enhancement purposes was a state jail felony under TEX. PENAL CODE ANN. § 12.35(a) (West Supp. 2012). A conviction for a state jail felony under Section 12.35(a) "may not be used for enhancement purposes" under Section 12.42(d). Former TEX. PENAL CODE § 12.42(e) (1995).[3] Thus, it was improper to enhance appellant's punishment in this case with his state jail felony conviction. Pursuant to *Ex parte Rich*, 194 S.W.3d 508, 513–14 (Tex. Crim. App. 2006), appellant did not waive his contention on appeal by pleading true at trial because the record affirmatively reflects that one of the enhancements was improper. Only one other felony conviction was alleged as an

---

[2]We note that appellant, who pleaded true to the enhancement allegations, does not assert on appeal that the evidence is insufficient to prove the enhancement allegations. *Cf. Jordan v. State*, 256 S.W.3d 286 (Tex. Crim. App. 2008).

[3]We note that former Section 12.42(e) was repealed in 2011 but remains in effect for purposes of this case. The substance of former Section 12.42(e) is currently found in the second sentence of Section 12.42(d).

enhancement. With only one enhancement, the minimum range of punishment for a person convicted of robbery, which is a second-degree felony, is five years. TEX. PENAL CODE ANN. § 12.32 (West 2011), § 12.42(b) (West Supp. 2012). The jury in this case was instructed that the minimum punishment was twenty-five years.

Because appellant did not object to the charge error, we must determine whether the error was so egregious as to deprive appellant of a fair and impartial trial. *Cartwright v. State*, 833 S.W.2d 134, 136 (Tex. Crim. App. 1992); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985); *Evans v. State*, 945 S.W.2d 153, 156 (Tex. App.—El Paso 1997, no pet.). We are constrained to hold that the error resulted in egregious harm even though the jury assessed appellant's punishment at the maximum number of years available and even though that punishment was not illegal. *See Jordan v. State*, 256 S.W.3d 286, 293 (Tex. Crim. App. 2008); *Evans*, 945 S.W.2d 153. In *Jordan*, the defendant was convicted for possessing a large amount of cocaine with intent to deliver and was ultimately sentenced as a habitual offender to confinement for ninety-nine years. 256 S.W.3d at 288–89. The State failed to prove the proper sequence of the offenses alleged as enhancements under Section 12.42(d), but it argued that any error was harmless. *Id.* at 289. The offense without enhancements carried a minimum term of confinement of fifteen years and a maximum of ninety-nine years or life. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(f) (West 2010). An eight-justice majority of the Court of Criminal Appeals agreed that a harm analysis should not be undertaken when the evidence is insufficient to prove the enhancement allegations. *Jordan*, 256 S.W.3d at 291. The majority then "conclude[d] that, even if the State's failure to prove the chronological sequence of punishment enhancement allegations as required under Section 12.42(d) is subject to a harm analysis, *such a deficiency will never be considered harmless*." *Id.* at 292 (emphasis added). In *Evans*, even though the jury had sentenced the defendant to confinement for the maximum number of years available, the court of appeals remanded for a new punishment hearing because the jury had not been instructed that it could assess a lesser, alternative punishment in a variety of facilities. 945 S.W.2d at 157. Appellant's fifth issue is sustained.

The judgment of the trial court is affirmed in part, reversed in part, and modified in part. We affirm appellant's conviction; we modify the judgment to delete the assessment of court-appointed attorney's fees ($3,176.25) and court-appointed investigator's fees ($834.71), which were included as court costs; we reverse only as to punishment; and we remand the cause for a

10

new hearing on punishment pursuant to TEX. CODE CRIM. PROC. ANN. art. 44.29(b) (West Supp. 2012).


JIM R. WRIGHT

CHIEF JUSTICE


October 4, 2012

Publish. *See* TEX. R. APP. P. 47.2(b).

Panel[4] consists of: Wright, C.J.,
McCall, J., and Hill.[5]

---

[4]Eric Kalenak, Justice, resigned effective September 3, 2012. The justice position is vacant pending appointment of a successor by the governor or until the next general election.

[5]John G. Hill, Former Chief Justice, Court of Appeals, 2nd District of Texas at Fort Worth, sitting by assignment.