**Opinion filed November 17, 2022**



# In The

# Eleventh Court of Appeals

_____

## No. 11-21-00098-CR

_____

## JAMIE LYNELL MCQUEEN, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 142nd District Court**

**Midland County, Texas**

**Trial Court Cause No. CR54737**

## M E M O R A N D U M   O P I N I O N

Jamie Lynell McQueen, Appellant, challenges his conviction of assault family violence enhanced, a third-degree felony. *See* TEX. PENAL CODE ANN. § 22.01(a)(1), (b)(2)(A) (West Supp. 2022). The jury found Appellant guilty and assessed punishment at eight years' confinement in the Institutional Division of the Texas

Department of Criminal Justice.[1]  Appellant challenges his conviction, raising three issues for our review.  First, he asserts that the trial court abused its discretion in allowing the State to ask an improper commitment question during voir dire.  Second, he contends that the trial court abused its discretion in admitting evidence that improperly bolstered the State's witnesses.  Third, he asserts that the trial court abused its discretion regarding rulings it made during closing argument.  We affirm.

*Factual Background*

Because Appellant does not challenge the sufficiency of the evidence, we present only a brief recitation of the relevant facts here.  Maria Rangel had an on-again, off-again relationship with Appellant for seventeen years.  On November 2, 2019, Rangel visited Appellant in Midland and the two stayed in a hotel room together.  That evening, Rangel noticed that Appellant had messages on his phone from a woman, and she questioned him about it.  Appellant became angry and raised his voice at Rangel for going through his phone.  Rangel stayed silent in hopes that Appellant would calm down; instead, Appellant's temper escalated, and he struck Rangel in the face, causing Rangel's eyebrow to split open.

Rangel expressed her need for medical attention.  Appellant refused her plea and gave Rangel a rag to help stop the bleeding.  Rangel went to use the bathroom and Appellant dragged Rangel off the toilet by her hair and kneed her in her ribs multiple times.  Rangel spent the night with Appellant to avoid any further confrontation violence.

The next morning, Rangel texted her mother, "Can you come please pick me up."  Rangel also went across the street to another hotel and called the police.  Officer

---

[1]We note that an enhancement allegation for a previous felony (possession of cocaine with intent to deliver) was also included in the indictment.  However, the jury found that the enhancement allegation was *not* true.

Hailee Pepper with the Midland Police Department responded to the call and spoke in person with Rangel, at which time she observed Rangel's facial injuries.

After speaking with Rangel, Officer Pepper spoke to Appellant. Officer Pepper advised Appellant that he was being detained for investigation of an assault and she read him his *Miranda* warnings. *See Miranda v. Arizona*, 384 U.S. 436 (1966). She did not observe any injuries to Appellant during the interview. After a brief conversation, Officer Pepper arrested Appellant for assault family violence.

*Discussion*

I. Improper Commitment Questions

In his first issue, Appellant asserts that the trial court abused its discretion by allowing the State to ask an improper commitment question during voir dire. The record reflects that during voir dire, the State addressed the applicable punishment range for the charged offense and asked the venire panel a question that contained a hypothetical set of facts that focused on the lower end of the punishment range.[2] Defense counsel interrupted the hypothetical and objected that the State was asking an improper commitment question. The trial court permitted the State to continue. The State subsequently asked a follow-up question addressing the maximum punishment for the offense. Defense counsel did not object to the State's follow-up question.

A. Standard of Review and Applicable Law

The trial court has broad discretion over voir dire proceedings. *Barajas v. State*, 93 S.W.3d 36, 38 (Tex. Crim. App. 2002). Absent an abuse of discretion, the trial court's decision regarding voir dire questions will not be disturbed. *Allridge v. State*, 762 S.W.2d 146, 163 (Tex. Crim. App. 1988); *Faulder v. State*, 745 S.W.2d

---

[2]Appellant's assault family violence charge carried a punishment range of two to ten years. *See* PENAL § 22.01(b)(2)(A), § 12.34 (West 2019). With the charged enhancement, Appellant's punishment range would have increased to two to twenty years. *Id.* § 12.42(a).

327, 334 (Tex. Crim. App. 1987). Permitting an improper commitment question is considered an abuse of the trial court's discretion. *See Standefer v. State*, 59 S.W.3d 177, 181 (Tex. Crim. App. 2001).

An improper commitment question is one that attempts to commit a prospective juror to a specific set of facts, absent a requirement by law. *Id.* If the commitment question in voir dire gives rise to a valid challenge for cause, it should contain the minimum facts necessary to test whether the juror is challengeable for cause. *Delacerda v. State*, 425 S.W.3d 367, 381 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd). Proposing a hypothetical with facts that go beyond the statutory language of the criminal offense risks objection thereto as an improper commitment question. *Cardenas v. State*, 325 S.W.3d 179, 189 (Tex. Crim. App. 2010).

### B. Analysis

With respect to its voir dire regarding the punishment range, the State began by asking the venire:

> [W]hat we really need to know is can you consider that full range of 2 to 20 [years] in a case of assault family violence enhanced with a previous conviction.
>
> Is there anybody in here who thinks that, you know, they might not be able to give somebody 2 or they might not be able to give up to 20? If you're leaning that way, we can talk about it.

In response, a veniremember stated that her answer would depend upon the case facts, which the venire had not been given. The State agreed and attempted to provide a "scenario" of hypothetical facts for the lower end of the punishment range, stating, "[W]e have to look at the minimum range. Let's say two years. Could you consider maybe two 18-year-olds get in an argument, boyfriend and girlfriend. Boyfriend slaps her in the face, she feels pain[.]"

At that point, defense counsel objected that the State was asking an improper commitment question. The State responded: "Your Honor, it is just an example

4

showing what type of facts could be presented[.]" The trial court permitted the question, and the State continued:

> So let's say those 18-year-old young people; no criminal history; he slaps her in the face, it hurts for a while. He immediately regrets it, apologizes. But an eyewitness saw it happen. In that case, could you see that we might be on the more minimum side of punishment?

> As opposed to let's say there's someone who has multiple prior felonies; beats up his mom after an argument and beats her up pretty good; doesn't show any remorse; has that lengthy criminal history and flees from the police when they're trying to arrest him. Do you see how that might get us closer to the maximum end?

> So basically we're not trying to commit you to a maximum range of punishment or even a minimum range of punishment, you just have to be able to think, you know, are there possible scenarios that fit within that assault family violence offense that I can consider giving someone a minimum as opposed to the maximum? Does that make sense?

> Anybody else have any concerns about that?

Defense counsel did not object, nor did he renew the original objection following this latter excerpt. To any of the State's hypotheticals, no commitment was requested and no verbal response from the veniremembers was recorded.

As a preliminary matter, we hold that Appellant has not adequately preserved error regarding the latter set of questions intended to address the maximum punishment. To preserve a complaint for appellate review, a defendant must generally demonstrate that (1) he made a timely and specific request, objection, or motion and (2) the trial judge ruled on it. TEX. R. APP. P. 33.1; *see Halprin v. State*, 170 S.W.3d 111, 119 (Tex. Crim. App. 2005) (applying Rule 33.1 preservation requirement to defendant's complaint about State's improper commitment question). "The complaining party must let the trial judge know what she wants and why she thinks she is entitled to it, and do so clearly enough for the judge to understand and

5

at a time when the trial court is in a position to do something about it." *Bekendam v. State*, 441 S.W.3d 295, 300 (Tex. Crim. App. 2014).

Appellant objected only during the State's initial hypothetical addressing the minimum punishment. Because objections must be specific and timely, only the objection to the original question was preserved for review on appeal. *See Geuder v. State,* 115 S.W.3d 11, 13 (Tex. Crim. App. 2003).

"Both the State and defense are entitled to jurors who can consider the entire range of punishment for the particular statutory offense—*i.e.*, from the maximum to the minimum and all points in between." *Cardenas v. State*, 325 S.W.3d 179, 184 (Tex. Crim. App. 2010). "Jurors must be able to consider both 'a situation in which the minimum penalty would be appropriate and . . . a situation in which the maximum penalty would be appropriate.'" *Id.* (alteration in original) (quoting *Fuller v. State*, 829 S.W.2d 191, 200 (Tex. Crim. App. 1992)). "Therefore, both sides may question the panel on the range of punishment and may commit jurors to consider the entire range of punishment for the statutory offense." *Id.* (footnote omitted). "A question committing a juror to consider the minimum punishment is both proper and permissible." *Id.* However, employing hypotheticals using evidentiary facts is perilous. *See id.* at 189.

"An improper commitment question attempts to create a bias or prejudice in the venireman before he has heard the evidence, whereas a proper voir dire question attempts to discover a venireman's preexisting bias or prejudice." *Sanchez v. State*, 165 S.W.3d 707, 712 (Tex. Crim. App. 2005). Improper commitment questions are prohibited in order to "ensure that the jury will listen to the evidence with an open mind—a mind that is impartial and without bias or prejudice—and render a verdict based upon that evidence." *Id.* Commitment questions "require a venireman to promise that he will base his verdict or course of action on some specific set of facts before he has heard any evidence, much less all of the evidence in its proper context."

*Id.*; *see Standefer v. State*, 59 S.W.3d 177, 179 (Tex. Crim. App. 2001) (stating that commitment questions "are those that commit a prospective juror to resolve, or to refrain from resolving, an issue a certain way after learning a particular fact"). A commitment question is one that asks a prospective juror to commit to a legal outcome based on certain facts. *Standefer*, 59 S.W.3d at 180. Here, the State attempted to ask if the venirepersons could commit to the range of punishment required by law.

The Court of Criminal Appeals has articulated a two-part test for determining whether a voir dire question is an improper commitment question. *Id.* at 182–83. However, there is little utility here in dissecting the State's questions using that two-part test. As observed in *Ng v. State*, No. 04-12-00392-CR, 2013 WL 4009665, at *4 (Tex. App.—San Antonio Aug. 7, 2013, no pet.) (mem. op., not designated for publication), "[h]ere, there is nothing in the record to indicate whether any identifiable venire members explicitly or implicitly agreed to commit themselves to a specific verdict or course of action as a result of the [alleged] improper commitment question." "Therefore, the record does not show that an objectionable venire member actually served on the jury. In addition, the record is silent as to whether [Appellant] exhausted all . . . peremptory challenges. It does not show that [Appellant] requested more peremptory challenges." *Ng*, 2013 WL 4009665, at *4. Without preserving this information for the record, Appellant cannot prevail on his issue on appeal.

If we assume without deciding that the question or questions posed by the State were improper commitment question(s), that the error was preserved by objection, and that the trial court erred by overruling those objections, any alleged error was still harmless. *See* TEX. R. APP. P. 44.2(b); *Sanchez*, 165 S.W.3d at 713.

> [R]eviewing courts should assess the potential harm of the State's
> improper commitment questioning by focusing upon whether a biased

7

juror—one who had explicitly or implicitly promised to prejudge some aspect of the case because of the State's improper questioning—actually sat on the jury. The ultimate harm question is: was the defendant tried by an impartial jury, or, conversely, was the jury or any specific juror "poisoned" by the State's improper commitment questions on a legal issue or fact that was important to the determination of the verdict or sentence?

*Sanchez*, 165 S.W.3d at 713. Factors to consider in assessing harm from the State's improper commitment question may include: the nature of the question, how many venirepersons agreed to commit themselves, whether those venirepersons served on the jury or were struck by the defendant, whether the defendant requested additional peremptory strikes, and whether there is a reasonable likelihood that the jury's verdict was substantially affected by the State's improper commitment question. *Id.* at 714.

As to harm, Appellant points to the fact that the jury, after finding that the enhancement did not apply, decided punishment on the higher end of the punishment range (eight out of a possible ten years). However, by Appellant's own admission, no venireperson answered any commitment question on the record. Further, the complained-of questions were not "unambiguously improper," *see id.* at 714, and Appellant does not claim that he was forced to use peremptory strikes to remove any potentially biased or committed jurors. Nor did the trial court deny any challenge for cause based on this line of questioning. Nothing in the record indicates that the State's complained-of questions resulted in a biased person being selected for the jury.

We cannot say from this record that by the State's inartful efforts of inquiring generally into whether the veniremembers could consider the full gamut of applicable punishment, it "poisoned" the *entire* venire panel—particularly where the veniremembers made no comments, much less commitments, one way or the other.

8

Accordingly, on this record, we hold that Appellant was not harmed by the State's allegedly improper commitment questions. We overrule Appellant's first issue.

II. Bolstering the Witness

In his second issue, Appellant asserts that the trial court abused its discretion when it admitted evidence of an emergency protective order, which according to Appellant, improperly bolstered the State's witnesses. The record reflects that during the guilt/innocence phase of trial, Officer Pepper described the general process of issuing an Emergency Protective Order (EPO). Although the EPO documentation itself was not admitted, the trial court permitted Officer Pepper to testify that one was issued. Appellant objected that the EPO was not relevant and that it was being offered merely to bolster the credibility of the State's witnesses. The trial court's ruling permitted limited testimony on the EPO.

A. Standard of Review and Applicable Law

"We review a trial court's decision regarding the admissibility of evidence under an abuse of discretion standard." *Cameron v. State*, 241 S.W.3d 15, 19 (Tex. Crim. App. 2007). Because trial courts are in the best position to decide questions of admissibility, we will uphold a trial court's admissibility decision when that decision is within the zone of reasonable disagreement. *Id.* "Where the appellate court can say with confidence that by no reasonable perception of common experience can it be concluded that proffered evidence has a tendency to make the existence of a fact of consequence more or less probable than it would otherwise be, then it can be said the trial court abused its discretion to admit that evidence." *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g).

The objection of "bolstering" is archaic in Texas trial practice and has been criticized as no longer adequate to preserve error. *See Cohn v. State*, 849 S.W.2d 817, 821 (Tex. Crim. App. 1993) (Campbell, J., concurring). To his credit, counsel for Appellant clarified that his objection included the admission of the EPO on the

basis of "relevance" in that "[i]t doesn't tend to make any fact more or less probable." Improper bolstering occurs when one item of evidence is improperly used by a party to add credence or weight to an earlier piece of relevant unimpeached evidence offered by the *same* party. *Valcarcel v. State*, 765 S.W.2d 412, 415 (Tex. Crim. App. 1989). Evidence that rehabilitates an impeached witness, of course, is not considered bolstering. *Cohn*, 849 S.W.2d at 819 n.5. More precisely, bolstering occurs when any evidence *that would otherwise lack relevance* is introduced with the sole purpose of convincing the factfinder that a particular witness or source of evidence is worthy of credit. *Id.* at 819–20. Evidence that corroborates a witness or enhances an inference made by other evidence has relevance and is not considered bolstering. *Id.* at 820.

### B. Analysis

Appellant argues that when Officer Pepper confirmed that an EPO was subsequently issued, she improperly "bolstered" both (1) the veracity of the victim's complaint and (2) the officer's belief in the truthfulness of the victim's complaint. Upon Appellant's objection to the State's initial questions about the officer's knowledge of whether an EPO was issued and what an EPO is, the trial court ruled "I'll let you ask just simply was an EPO issued." Then the trial court, with its admonition to "[k]eep it pretty limited," added that Officer Pepper could be asked "what the purpose of [an EPO] is." Appellant made no additional objection.

Trial counsel for Appellant indicated that when he made the initial objection, he thought that the State was intending to actually offer into evidence the EPO document. The trial court confirmed that it would not admit the EPO for the jury's review, and it did not do so. Nor was the content of the EPO or the officer's supporting affidavit admitted. It was explained to the jury that in a claim of domestic violence, routinely an EPO is issued, sometimes even without the consent of the victim. Even if we accept Appellant's argument that the mere existence of an EPO

10

might be seen by the jury to enhance the officer's and the victim's credibility, the existence of an EPO (particularly in conjunction with the photos taken of the victim's injuries and admitted through Officer Pepper) corroborated the victim's claimed injury. We conclude that it was within the trial court's discretion to find this evidence relevant, and we disagree with Appellant's contention with respect to that limited testimony.

However, Officer Pepper subsequently expanded her answer beyond the trial court's ruling. Officer Pepper added:

> So what we do is we apply for an emergency protective order. The judge will read our affidavit and read our reason for wanting an emergency protective order, and if he sees fit then he will either grant it or not grant it.

Appellant did not object to this response, did not request an instruction for the jury to disregard the response, and did not move for mistrial. The officer then reconfirmed that "an emergency protective order was issued in this instance." Appellant now complains that the witness's unsolicited and unobjected-to testimony "would have given the impression to the jury a judge reviewed the evidence and already found the State's witnesses should be believed." That objection however was not made or ruled upon at trial and therefore was not preserved for appeal. *See* TEX. R. APP. P. 33.1; *Geuder*, 115 S.W.3d at 13.

Accordingly, because the existence of an EPO was not offered solely to enhance the witnesses' credibility and was relevant, the trial court did not abuse its discretion in its admission. We overrule Appellant's second issue.

III. Objections to Closing Arguments

In his third issue, Appellant asserts that the trial court abused its discretion with respect to objections made by each party to the other's closing argument. The record shows that during closing arguments, counsel for both Appellant and the State addressed the definition of "reasonable doubt." When Appellant's trial counsel did

so, the State objected. But instead of sustaining or overruling same, the trial court asked Appellant's counsel to rephrase. Appellant's counsel subsequently objected to the State's closing argument. The trial court overruled Appellant's objection and permitted the State to continue. On appeal, Appellant complains that (1) the trial court prohibited Appellant from asking for an acquittal if the jury only found it "highly likely" that an assault occurred and (2) the trial court allowed the State to improperly suggest a definition of "beyond a reasonable doubt" to the jury during closing argument.

### A. Standard of Review and Applicable Law

A trial court's ruling on an objection to improper jury argument is reviewed for an abuse of discretion. *See Garcia v. State*, 126 S.W.3d 921, 924 (Tex. Crim. App. 2004). We examine rulings on alleged improper argument in light of the facts adduced at trial and in the context of the entire argument. *Thompson v. State*, No. 01-14-00862-CR, 2015 WL 9241691, at *2 (Tex. App.—Houston [1st Dist.] Dec. 17, 2015, no pet.) (mem. op., not designated for publication) (citing *McGee v. State*, 774 S.W.2d 229, 239 (Tex. Crim. App. 1989)). Permissible jury argument generally falls within four distinct and limited categories: (1) summation of the evidence; (2) reasonable deductions from the evidence; (3) response to opposing counsel's argument; and (4) plea for law enforcement. *Brown v. State*, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008). Even if an argument is improper, reversal is only necessary if the statements were extreme or manifestly improper and deprived Appellant of a fair and impartial trial. *Id.* at 570, 573.

### B. Analysis

Appellant first complains that the trial court improperly limited defense counsel's closing argument and prohibited him from addressing reasonable doubt.

12

During his closing argument, defense counsel stated:

> And no matter what you think, if you think my client's guilt is highly likely, kind of likely, probably, possibly, all of that is not guilty.

The State objected, and the trial court, rather than making a ruling, merely asked defense counsel to "rephrase." The trial court did not sustain the State's objection, did not limit defense counsel's closing argument, and did not direct the jury to disregard. Accordingly, we hold that this portion of Appellant's third issue was not preserved for our review.

Appellant next complains that the trial court erred when it later allowed the following closing argument to be made by the State:

> If you know he did it, you know beyond a reasonable doubt. You might want that extra. You might want more. But if you know it happened and you know that it was that man who put his hands on Maria Rangel, you are at beyond a reasonable doubt.

Appellant objected. The trial court overruled Appellant's objection, but the State immediately moved on. Appellant argues that the State improperly provided the jury with a definition of "beyond a reasonable doubt"—rather than merely arguing that the State does not have to resolve all doubt in order to meet its burden. We disagree.

We discussed the history of providing juries with a definition of "reasonable doubt" in *Chasteen v. State*, No. 11-02-00250-CR, 2003 WL 204708, at *1 (Tex. App.—Eastland Jan. 30, 2003, pet. ref'd) (not designated for publication). As we acknowledged in *Chasteen*, the Texas Court of Criminal Appeals has held that "the better practice is to give no definition of reasonable doubt at all to the jury." 2003 WL 204708, at *1 (quoting *Paulson v. State*, 28 S.W.3d 570, 573 (Tex. Crim. App. 2000), which addressed the inclusion of a "reasonable doubt" definition in the jury charge). In *Chasteen*, we relied on the reasoning of *Paulson* and held that counsel's arguments regarding the definition of reasonable doubt were misleading and improper. *Id.* at *2. However, we do not believe that the State's argument in the

case currently before us was erroneous or improper or that it misled the jury regarding the definition of reasonable doubt. Moreover, the State's argument regarding reasonable doubt was made in response to defense counsel's argument regarding reasonable doubt. *See, e.g.*, *Lewis v. State*, No. 05-06-00076-CR, 2007 WL 1054143, at * 7–8 (Tex. App.—Dallas Apr. 10, 2007, no pet.) (not designated for publication) (holding that State's argument about reasonable doubt was permissible because it was made in answer to defendant's argument about reasonable doubt).

Even if the State's definition of "beyond a reasonable doubt" was improper, reversal for an improper argument is only necessary if the statement deprives the defendant of a fair trial. *McGee*, 774 S.W.2d at 238. Importantly, in its charge to the jury at the guilt/innocence phase of trial, the trial court specifically instructed the jury: "It is not required that the prosecution prove guilt beyond all possible doubt; it is required that the prosecution's proof excludes all 'reasonable doubt' concerning the defendant's guilt." Appellant claims that "the effect of a jury instruction would have been damaged by the argument," but he does not cite to any evidence of such potential damage, such as the jury's confusion or a request for clarification. In addressing the trial court's challenged rulings on the closing arguments of both parties, because Appellant provides no evidence to the contrary, we must presume that the jury followed the trial court's charge. *Smith v. State*, 631 S.W.3d 484, 500 (Tex. App.—Eastland 2021, no pet.). We find nothing in the record that the jury was confused by either side's argument or the instructions. We find nothing in the voir dire examination demonstrating that any selected juror failed to understand or was confused by the concept of "beyond a reasonable doubt" or that a juror's common understanding thereof was supplanted by the closing argument of either party. *See Wilkerson v. State*, 391 S.W.3d 190, 194 (Tex. App.—Eastland 2012, pet. ref'd). Nor do we find anything that rebuts the presumption that the charge, agreed

14

upon by both parties, was followed by the jury. *See Smith*, 631 S.W.3d at 499. We find no abuse of discretion in the rulings of the trial court and no indication that Appellant was deprived of a fair trial. We overrule Appellant's third issue.

*This Court's Ruling*

We affirm the judgment of the trial court.

W. BRUCE WILLIAMS
JUSTICE

November 17, 2022

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.